Francis B. Bannan, Zelia R. Bannan, Mary J. Bannan and Martha R. Bannan, heirs of John Bannan, deceased, Appellants, *v.* John E. Graeff and Daniel R. Miller, surviving partners of the firm lately trading as Levi Miller & Co.

*Mines and mining—Termination of lease—Royalties.*

Where a mining lease provides that the lessees shall mine and ship each year as much coal as will produce $5,000, at the rents designated, "unless prevented from doing so by any unavoidable accident or occurrences beyond their control," it is a complete defense to an action for royalties, that the coal had become so far exhausted before the end of the term as absolutely to prevent the lessees from mining further.

Argued Feb. 14, 1898. Appeal, No. 201, Jan. T., 1897, by plaintiffs, from judgment of C. P. Schuylkill Co., Sept. T., 1896, No. 178, on verdict for defendants. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Assumpsit on a mining lease. Before ALBRIGHT, P. J.

Rule for judgment for want of a sufficient affidavit of defense.

The facts sufficiently appear by the opinion of the Supreme Court.

*Error assigned* was in discharging rule for judgment for want of a sufficient affidavit of defense.

*George M. Roads,* for appellants.—The burden of proving that there is no coal, or that it is exhausted, on the demised premises, is upon the defendants, the lessees: Wilson v. Beech Creek Cannel Coal Co., 161 Pa. 499.

The saving clause in the lease with regard to the unavoidable accidents or occurrences beyond control will not avail the lessees. Faults in a vein are not "unavoidable accidents or occurrences beyond control;" they are expected conditions existent at the time of the execution of the contract, and are always presumed to exist in coal mines: Ridgway v. Sneyd, 1 Kay, 627; Mellers v. Devonshire, 16 Beav. 252; Jervis v. Thomkinson, 1 H. & N. 208; Timlin v. Brown, 158 Pa. 606; Morris v. Smith, 3 Doug.

279; Oakley v. Packet Co., 11 Ex. 618; Lehigh Coal Co. v. Wright, 177 Pa. 387; Walker v. Tucker, 70 Ill. 527; Muhlenberg v. Henning, 116 Pa. 138; Kemble Iron Co. v. Scott, 15 W. N. C. 220; McCahan v. Wharton, 121 Pa. 424; Bamford v. Lehigh Zinc & Iron Co., 33 Fed. Rep. 677; McDowell v. Hendrix, 67 Ind. 522.

Where a dead (fixed) rent is reserved it is payable prima facie, although the demised premises be never actually worked: McSweeney on Mines and Minerals, 215; Jones v. Reynolds, 7 C. & P. 335; Jegon v. Vivian, L. R. 1 C. P. Cases, 34; Phillips v. Jones, 9 Sim. 519.

Mines are notoriously liable to faults; and the doctrine of caveat emptor may therefore, in the latter case, be with peculiar propriety applied for the benefit of the lessor: Ridgway v. Sneyd, 1 Kay, 627.

The rent is also payable prima facie, after the exhaustion of the demised property: Rex v. Bedworth, 8 East, 387; Bute v. Thompson, 13 M. & W. 487; Jegon v. Vivian, L. R. 1 C. P. Cases, 34; Jefferys v. Fairs, L. R. 4 Ch. Div. 448.

*John W. Ryon*, for appellee.—The exhaustion of the coal is a complete defense: Harlan v. Lehigh Coal, etc., Co., 35 Pa. 287; Kemble Iron Co. v. Scott, 15 W. N. C. 220; Buhl v. Thompson, 3 Pennypacker, 267; McCahan v. Wharton, 121 Pa. 424; Boyer v. Fulmer, 176 Pa. 282; Muhlenberg v. Henning, 116 Pa. 138; Reilly v. Daly, 159 Pa. 605; Fessler v. Love, 48 Pa. 407.

OPINION BY MR. JUSTICE GREEN, July 21, 1898:

There was no absolute obligation in the lease in question to pay a fixed royalty or rental throughout the whole period of the term, as there was in Timlin v. Brown, 158 Pa. 606, and therefore the liability of the lessees must be measured by the ordinary reading of the terms of the contract. The sixth clause of the lease provides that the lessees shall mine and ship each year as much coal as will produce $5,000 yearly at the rents designated, "unless prevented from doing so by any unavoidable accident or occurrences beyond their control." If therefore the coal on the premises became exhausted before the end of the term this would be an occurrence beyond their control, which would abso-

lutely prevent them from taking out the quantity necessary to make up the annual rental of $5,000. The affidavit of defense positively avers that the lessees, "mined out all the coal from the Joseph Keffer and all of the Lykens Valley measures in the Nancy Kinnear, so that no available or workable coal was left in either of said tracts in the veins referred to; that many of the veins were faulty, and large sums of money were expended in cutting through the faults, and in driving tunnels, and in prosecuting their investigation in the veins aforesaid until all the coal was mined out and shipped away and paid for by the lessees." The affidavit further alleges, "that during the time they worked and mined coal in said lands they paid an annual rental of more than five thousand dollars, and they continued such annual payments until the coal as aforesaid was exhausted, and they therefore deny that there is anything due and payable on account of said lease to the said Francis B. Bannan or any other person or persons." These averments are, of course, to be taken as verity, and if they are true, the lessees have paid all the money which they were required to pay under the terms of the contract.

In Kemble Coal & Iron Co. v. Scott, 15 W. N. C. 220, the lessee covenanted to pay fifty cents per ton of ore mined, and that after the first year the rent should not be less than $10,000 whether ore to that extent was mined or not. The defendant offered to prove on the trial that the premises did not contain the necessary quantity of ore fit for use in a furnace to yield the amount of royalty to be paid, and we decided that this was a good defense. GORDON, J., delivering the opinion said: "Hence the material question was, could the ore found in the leased premises, under the present methods of making iron, be properly used for the purpose indicated? If it could be so used, and there was enough of it, the plaintiff had a right to require the full performance of the contract; if however there proved to be a failure in either of these particulars, then was the defendant released from payment in whole or in part, as the case might be." In Muhlenberg v. Henning, 116 Pa. 138, our late Brother CLARK, in a very clear and exhaustive opinion, held that there was no liability on the part of the lessee to pay a fixed minimum royalty if there was no ore on the premises to mine, or if the ore that was there was not of the kind that was

to be taken out under the contract. It was an iron ore lease in which it was provided that the lessee should mine and carry away at least fifteen hundred tons of ore each year during the continuance of the lease " or in default thereof pay a royalty of $525 annually." An action being brought to recover the minimum royalty for two years the defendants filed affidavits of defense, saying that they had entered upon the premises and had expended $3,000 in buildings and machinery, and had prosecuted the work of mining for ore with due diligence for nine months, but were unable to find ore in sufficient quantity to enable them to carry out their contract and that the ore they did find was not of a merchantable character. In the opinion Justice CLARK said: " If, however, it was established by actual and exhaustive search that at the time of the contract there was in fact no ore in the land, or no ore of the kind contracted for, it cannot be pretended, upon any fair or reasonable construction of the contract, that the lessees were nevertheless bound for the royalty of $525 annually; for the payment of the royalty was undoubtedly based upon the assumption of the parties that ore, ore of the quality specified, existed there. . . . And how could the lessees be in default in mining fifteen hundred tons annually if there was no ore to mine ? We are not to construe the contract to require the lessees to do an impossible thing. The $525 is not a penalty; it is the price of the ore. The grant was of the ore in place, and if the subject-matter of the contract fail, the price is not payable." The same doctrine was applied in McCahan v. Wharton, 121 Pa. 424, and in Boyer v. Fulmer, 176 Pa. 282. In the latter case the lease was for the mining of iron ore, and the royalty was to be sixty cents a ton for every ton of ore sold from the premises, but the amount was to be not less than $400 each year. On the trial of an action for the unpaid royalties the defendant offered to prove that he had mined whatever ore it was possible to obtain on the premises ; that he had expended $10,000 in his efforts to obtain ore ; that the ore in the place was exhausted, and that the premises did not contain the quantity of ore necessary to produce the minimum quantity of ore fit for use in a furnace to pay the royalty fixed. The court below rejected the offers of testimony and instructed the jury to render a verdict for the plaintiff for the full amount claimed. An appeal was taken to

this court and we reversed the judgment, holding that while the defendant was bound to take out the ore or pay the fixed royalty if the ore was there, yet, if it was not there, or had become exhausted, the obligation to pay the royalty ceased. We said: " If the ore was not there at all, or became exhausted, so that it could no longer be taken out in such quantity, the lessee was not bound to pay for it. He could not do an impossible thing, and therefore could not be held liable for not doing it." These decisions control the present case. We are clearly of opinion that the learned court below was entirely correct in discharging the rule for judgment for want of a sufficient affidavit of defense.

Judgment affirmed and procedendo awarded.